United States District Court
Southern District of Texas

**ENTERED**

April 22, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NORMAN AARON THOMLEY, | § | |
| TDCJ #01039044, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-309 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent.[1] | § | |

## MEMORANDUM AND ORDER

This is a habeas proceeding brought by a person in state custody. The petitioner,

Norman Aaron Thomley (TDCJ #01039044), is a state inmate incarcerated in the Texas

Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), and he

challenges the method by which the eligibility date for his release on parole was determined.

Respondent William Stephens has filed a motion for summary judgment accompanied by the

appropriate state-court records (Dkt. 31 and Dkt. 32). Thomley has responded (Dkt. 37).

After reviewing all of the pleadings, the record, and the applicable law, the Court concludes

that the Respondent is entitled to summary judgment.

---

[1]     Thomley lists "Brad Livingston" as the respondent. Because Thomley is in the custody of the
Texas Department of Criminal Justice - Correctional Institutions Division, Director William
Stephens has been substituted as the proper respondent pursuant to Rule 2(a) of the Rules
Governing Section 2254 Cases in the United States District Courts.

## I.    **BACKGROUND**

In late July 1996, Thomley drove his truck at a high rate of speed into a stopped car occupied by members of the Winborn family, causing a wreck that killed three of the Winborns and severely injured three more (Dkt. 32-26 at pp. 59–60). At the time of the wreck, Thomley, who was unhurt, was driving with a blood alcohol level of .295 (Dkt. 32-26 at pp. 59–60).

Thomley received one eight-year sentence apiece on three counts of intoxication manslaughter, with the three sentences to be served consecutively (Dkt. 32-25 at pp. 63–68). The trial court also entered a finding that Thomley had used a deadly weapon, presumably his truck, in the commission of the offenses (Dkt. 32-25 at pp. 63–68). Because Thomley had used a deadly weapon, he had to serve one-half of his sentences in order to be eligible for parole. TEX. GOV'T CODE § 508.145(d).

The First Court of Appeals of Texas affirmed the trial court's judgments on direct appeal, and the Texas Court of Criminal Appeals denied review. *Thomley v. State*, 987 S.W.2d 906 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see also* Texas Court of Criminal Appeals Case Numbers PD-1036-99; PD-1037-99; PD-1038-99. Thomley did not begin serving his sentences until 2001 because he absconded while he was out on appeal bond (Dkt. 32-21 at pp. 25, 107).

Thomley came up for parole review on June 14, 2005—halfway through his first consecutive eight-year sentence—and learned that he would be serving his first sentence in

full (Dkt. 32-21 at p. 25). When the Texas Board of Pardons and Paroles ("the Board" or "the Parole Board") denied parole on his first sentence, Thomley also learned that he would become eligible for parole release not in 2013, as he had previously thought, but in 2017 at the earliest (Dkt. 32-21 at pp. 28–29). Thomley's miscalculation stemmed from his mistaken belief that his cumulative sentences would be treated as a single combined sentence for the purposes of determining his parole release eligibility, a practice that was discontinued by TDCJ and the Board in 1997 (Dkt. 32-21 at p. 29). TDCJ and the Board changed their policy in 1997 because, as it turned out, they had been misinterpreting a statute regarding parole eligibility that the Texas Legislature passed in 1987. *Moore v. Owens*, 361 Fed. App'x 587, 589–90 (5th Cir. 2010).

The 1997 change in calculation methodology meant that Thomley could not accrue time credit for his second stacked sentence until he had either fully served or been paroled on his first one. *See Ex parte Kuester*, 21 S.W.3d 264, 265, 271 (Tex. Crim. App. 2000), *overruled on other grounds*, *Ex parte Hale*, 117 S.W.3d 866, 872 n.27 (Tex. Crim. App. 2003). Likewise, Thomley could not accrue time credit for his third stacked sentence until he had either fully served or been paroled on his second one. Under the old methodology, which would have looked at the three eight-year sentences as one continuous twenty-four-year sentence, Thomley would have been guaranteed eligibility for release on parole after serving twelve years—half of the combined sentence. However, the new methodology required the sentences to be considered and discharged individually and sequentially, which

meant that, when his first parole was denied, Thomley had no chance of being eligible for parole release until he had served at least sixteen years.

The new methodology, in other words, created a possibility that did not exist before 1997: the possibility that Thomley could serve more than twelve years before he first became eligible for release on parole. And that possibility became a reality—the Board denied Thomley's parole on the first eight-year sentence, requiring him to serve all of it. That meant that Thomley would have to serve eight years before he could start accruing time on his second sentence, then four more years (half of the second sentence) before he could be considered for parole on the second sentence. Even if he got paroled on the second sentence, he would then begin serving the third sentence, which would also require at least four years. In short, under the new methodology, the Board's denial of parole on the first sentence required Thomley to serve at least sixteen years (eight plus four plus four), and possibly as many as twenty (eight plus eight plus four), before he could become eligible for parole release, whereas under the old methodology Thomley would have been eligible for parole release after serving twelve years.

On February 4, 2013, Thomley filed petitions for writs of habeas corpus with the state trial court pursuant to Article 11.07 of the Texas Code of Criminal Procedure. *See* Texas Court of Criminal Appeals Case Numbers WR-53,542-09; WR-53,542-10; WR-53,542-11. In the three identical petitions (one for each of Thomley's stacked sentences), Thomley argued that TDCJ and the Board had violated the Ex Post Facto Clause of the United States

Constitution by retroactively applying parole-eligibility-calculation policies that originated after he was convicted (Dkt. 32-21 at p. 13). Thomley further argued that his due process rights under the United States Constitution were violated (Dkt. 32-21 at p. 14). On March 20, 2013, the Texas Court of Criminal Appeals dismissed one of the petitions because it stemmed from a sentence (the first sentence, which Thomley completed in 2009) that had been discharged and denied the other two petitions without written orders on the findings of the trial court, which did not hold a hearing  (Dkt. 32-21 at p. 2; Dkt. 32-25 at p. 2; Dkt. 32-27 at p. 2).

Thomley then brought his ex-post-facto and due-process arguments to this Court in the instant habeas petition (Dkt. 1 and Dkt. 2).

## II. <u>STANDARDS OF REVIEW</u>

### A.   Habeas Corpus

Although Thomley filed his federal habeas petition under 28 U.S.C. § 2241, the requirements of 28 U.S.C. § 2254 apply because Thomley is in custody pursuant to the judgments of a state court. *Felker v. Turpin*, 518 U.S. 651, 662 (1996); *Hartfield v. Osborne*, 808 F.3d 1066, 1072–73 (5th Cir. 2015) (citing *Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003)); *see also Greene v. Tennessee Dep't of Corrections*, 265 F.3d 369, 371 (6th Cir. 2001) (commenting that Section 2254 is essentially "the exclusive vehicle for prisoners in custody pursuant to a state court judgment who wish to challenge anything affecting that custody" because it is "clear that bringing an action under § 2241 will not permit the prisoner

to evade the requirements of § 2254") (quoting *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000)).

The provisions of Section 2254(d) create a highly deferential standard, thereby demanding that state court decisions be given the benefit of the doubt. *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002). A federal court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

"Pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2)." *Martin v. Cain*, 246 F.3d 471, 475–76 (5th Cir. 2001) (quotation marks omitted).

A state court decision is contrary to clearly established law if the decision contradicts the governing law set forth by the Supreme Court or if the state court decides a case differently than the Court's precedent when the facts are materially indistinguishable. *Early v. Packard*, 123 S. Ct. 362, 365 (2002). A state court unreasonably applies federal law if the court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000). To be an unreasonable application of federal law, the state decision must be

-6-

objectively unreasonable and more than simply incorrect or erroneous. *Lockyer v. Andrade*, 123 S. Ct. 1166, 1174 (2003).

Because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants great deference to state determinations of factual issues, a claim adjudicated on its merits in state court and based on factual decisions will not be overturned on factual grounds unless the court determines that the decision was both incorrect and objectively unreasonable. *Williams*, 120 S. Ct. at 1522. In reviewing a federal habeas petition, the court must presume that a factual determination made by the state court is correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Thomley argues that the Court should employ a *de novo* standard where Section 2254 would ordinarily require deference because "the state court decision fails to articulate any rationale for its adverse determination of [Thomley's] federal claims," making review of the state courts' application of clearly established federal law impossible (Dkt. 2 at p. 12). Basically, Thomley says that this Court cannot apply the AEDPA's deferential standard because there is no reasoned state-court judgment to defer to.

That is not how the deferential standard works—if anything, an unexplained state-court judgment actually makes the federal habeas petitioner's burden heavier, not lighter. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was *no* reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 97–100 (2011) (emphasis added). Besides, the

Texas Court of Criminal Appeals adopted the findings and conclusions of the state trial court (Dkt. 32-25 at p. 2; Dkt. 32-26 at pp. 16–18). In any event, as discussed below, Thomley could not win even under the lighter *de novo* standard, as *Moore* and *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995), both of which are 42 U.S.C. § 1983 cases, make clear. Frankly, it probably would have been more appropriate for Thomley to bring these claims under Section 1983, although *Moore* and *Orellana* (and the other cases cited below) demonstrate that Thomley could not have obtained relief under that statute either. *See Irving v. Thigpen*, 732 F.2d 1215, 1216 (5th Cir. 1984) (holding that neither habeas nor civil rights relief can be had absent the allegation of a Constitutional violation).

## B.    Summary Judgment

A court may grant summary judgment when the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986). The moving party has the responsibility of informing the court of the basis for its summary judgment motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . .'" that demonstrate that there is no genuine issue of material fact. *Celotex*, 106 S. Ct. at 2553. In response, the nonmovant must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, or admissions on file show that there is a genuine issue of material fact requiring resolution through a trial. *Id.* If the nonmoving party is unable to meet this burden,

the motion for summary judgment will be granted. FED. R. CIV. P. 56(c).

Rule 56 of the Federal Rules of Civil Procedure "applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The rule, however, only applies to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds*, *Tennard v. Dretke*, 124 S. Ct. 2562 (2004). Generally, in ruling on a motion for summary judgment, the court resolves any doubts and draws any inferences in favor of the nonmoving party—*Hunt v. Cromartie*, 119 S. Ct. 1545, 1551–52 (1999)—but 28 U.S.C. § 2254(e)(1) commands that factual findings of the state court are to be presumed correct. Thus, 28 U.S.C. § 2254(e)(1) overrides the general summary judgment rule. *Smith*, 311 F.3d at 668. The petitioner is required to rebut the presumption of correctness by clear and convincing evidence; otherwise, the court will presume the factual determination of the state court is correct. *Id.*; 28 U.S.C. § 2254(e)(1).

## III.   THE EX POST FACTO CLAUSE

Thomley's primary argument is that the 1997 change in TDCJ and Parole Board policy to conform with the 1987 parole-eligibility statute violated the Ex Post Facto Clause of the United States Constitution (Dkt. 2 at pp. 19–25). In Thomley's view, because he was convicted in 1996, the interpretation followed by the Board and TDCJ before 1997 should govern the calculation of his parole eligibility date. The Fifth Circuit's *Moore* case decided this issue adversely to Thomley's position. *Moore*, 361 Fed. App'x at 590–91; *see also*

*Orellana*, 65 F.3d at 32–33.

A law violates the Ex Post Facto Clause if it retroactively imposes punishment for an act that is greater than that prescribed when the act was committed. *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981). "Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Id.*

The Court seriously doubts that Thomley has shown the retroactive imposition of greater punishment—the actions of TDCJ and the Board did not extend Thomley's total prison sentence beyond its original twenty-four years, and eligibility for parole does not guarantee release on parole anyway. *See Orellana*, 65 F.3d at 32 (discussing district court's rationale). Case in point: Thomley was denied parole on his first sentence.

But that aside, the Ex Post Facto Clause does not prohibit an agency's correction of its prior misapplication of an existing statute. *Cortinas v. United States Parole Comm'n*, 938 F.2d 43, 46 (5th Cir. 1991). When an agency's revised interpretation of a statute simply brings the interpretation into line with the statute's plain meaning, there is no Ex Post Facto violation, even if the correction works to the disadvantage of someone who was relying on the agency's mistake. *See id.*; *see also Stephens v. Thomas*, 19 F.3d 498, 500 (10th Cir. 1994); *Glenn v. Johnson*, 761 F.2d 192, 194–95 (4th Cir. 1985); *Caballery v. United States Parole Comm'n*, 673 F.2d 43, 47 (2d Cir. 1982), *cert. denied*, 457 U.S. 1136 (1982).

As explained by the Fifth Circuit in *Moore*, the statute at issue in this case was passed

in 1987, well before Thomley's convictions. *Moore*, 361 Fed. App'x at 589–91. The 1987

version of the statute, which was contained in Section 8(d)(3) of Article 42.18 of the Texas

Code of Criminal Procedure, specifically said that the Board "may not treat consecutive

sentences as a single sentence for purposes of parole[.]" *See* Act of June 19, 1987, ch. 1101,

1987 Tex. Gen. Laws 3750, 3755. The current version of the statute, codified in 1997, uses

materially identical language. *See* TEX. GOV'T CODE § 508.150(c)(1) ("A parole panel may

not . . . consider consecutive sentences as a single sentence for purposes of parole[.]"). So

TDCJ and the Parole Board were only correcting their own mistaken interpretation when, in

1997, they stopped considering consecutive sentences as single continuous sentences for the

purpose of determining parole eligibility. *Moore*, 361 Fed. App'x at 589–91.

Contrary to Thomley's argument, the Ex Post Facto clause does not create a vested

right in an agency's erroneous interpretation of a statute. *Caballery*, 673 F.2d at 47; *see also*

*Cortinas*, 938 F.2d at 46 (expressly adopting *Caballery*'s analysis). As the *Moore* panel held,

the 1997 correction "did not alter the law" and so cannot support a claim under the Ex Post

Facto clause. *Moore*, 361 Fed. App'x at 590; *see also Orellana*, 65 F.3d at 32–33.

## IV.   DUE PROCESS

Thomley also argues that his due process rights under the United States Constitution

were violated because the actions of TDCJ and the Board contravened Thomley's purported

state-created right to be eligible for release on parole after serving twelve years of his

aggregate twenty-four-year sentence (Dkt. 2 at pp. 25–38; Dkt. 37 at pp. 12–14). Thomley

lays claim to a "liberty interest in parole eligibility" on the basis that "prisoners such as applicant justifiably expect that parole will be granted fairly and according to law whenever those standards of eligibility are met; i.e., serving one-half of the sentence to become eligible for release on parole" (Dkt. 37 at pp. 12–13) (quotation marks and brackets omitted).

Thomley cannot state a due process claim. The extent of a prisoner's liberty interest in parole release is defined by state statute—*Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987)—and the Fifth Circuit has repeatedly recognized that the Texas parole statutes create no Constitutional right to release on parole because they create no expectancy of early release. *See Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *Orellana*, 65 F.3d at 31–32; *Gilbertson v. Texas Bd. of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir. 1991); *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). "It is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds." *Johnson*, 110 F.3d at 308. For instance, a Texas inmate does not state a Constitutional claim by saying that he lost his tentative parole date without being told why—*Gilbertson*, 993 F.2d at 75—or by saying that, pursuant to a rules change, he is no longer being reviewed for parole annually. *Allison*, 66 F.3d at 74.

The Court further notes that the Board and TDCJ behaved in a manner that was entirely consistent with the Texas parole statutes. *See Gilbertson*, 993 F.2d at 75 ("The

statute does not provide that the board must give reasons for denying parole or revising a tentative parole date."). Indeed, this is Thomley's primary complaint: that in 1997 the Board and TDCJ aligned their procedures with the dictates of the 1987 statute. Thomley has not established a due process violation.

## V.    CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998) (applying certificate of appealability requirement to petition filed by state prisoner under 28 U.S.C. § 2241).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the

-13-

issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.     The Respondent's motion for summary judgment (Dkt. 31) is **GRANTED**.

2.     The habeas corpus petition (Dkt. 1) is **DISMISSED WITH PREJUDICE.**

3.     A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on ___April 21___, 2016.

GEORGE C. HANKS, JR.<br>
UNITED STATES DISTRICT JUDGE